J-S43009-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| JOSHUA MENDEZ | : | |
| | : | |
| Appellant | : | No. 558 MDA 2023 |

Appeal from the Judgment of Sentence Entered March 16, 2023
In the Court of Common Pleas of Lycoming County Criminal Division at
No(s): CP-41-CR-0000425-2022

BEFORE:    McLAUGHLIN, J., KING, J., and COLINS, J.[*]

MEMORANDUM BY McLAUGHLIN, J.:                **FILED: FEBRUARY 16, 2024**

Joshua Mendez appeals from the judgment of sentence imposed on his convictions for two counts of delivery of a controlled substance, two counts of use of a communication facility, and one count of possession with intent to deliver a controlled substance ("PWID").[1] Mendez challenges the weight of the evidence, the denial of his motion *in limine*, and the length of his sentence. We affirm.

The trial court recounted the underlying facts as follows:

On October 15, 2021, Detective Curt Loudenslager from the Lycoming County Narcotics Enforcement Unit (NEU) utilized a confidential information (CI), who indicated he could purchase methamphetamines from an individual he knew as "Josh." The CI contacted "Josh" via telephone to purchase $200 of

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] *See* 35 P.S. § 780-113(a)(30); 18 Pa.C.S.A. § 7512(a); and 35 P.S. § 780-113(a)(30), respectively.

methamphetamines. Detective Loudenslager strip-searched the CI, provided the CI with $200, and transported the CI to Second Avenue in Williamsport, Pennsylvania. The CI entered Josh's residence at 629 Second Avenue, provided the $200 to Josh, and Josh provided methamphetamines to the CI. The CI exited the residence, returned to Detective Loudenslager, and surrendered approximately 2.3 grams of suspected methamphetamines to the detectives.

On October 25, 2021, the CI texted Josh to purchase 2 grams of methamphetamines. Detective Loudenslager strip-searched the CI and provided the CI with $200 in pre-recorded currency. Detective Loudenslager transported the CI to Second Avenue, the CI entered the residence at 629 Second Avenue, and Josh provided the CI with approximately 1.39 grams methamphetamines in exchange for the $200. Josh admitted that he was short about .5 grams. The CI exited the residence, returned to Detective Loudenslager, and surrendered the methamphetamines.

On October 29, 2021, Detective Loudenslager obtained a search warrant for 629 Second Avenue. Joshua Mendez was alone in the first-floor bedroom of the residence. During the search, detectives from the NEU discovered seven bags of methamphetamines in a bag in an ashtray near the bed and another bag of methamphetamine on the bed.

Trial Court Opinion, filed 6/21/23, at 1-2.

On the day before trial, the Commonwealth informed Mendez that the NEU had just provided it with a surveillance video of the CI leaving Mendez's residence after the first controlled buy and asking one of Mendez's neighbors for a light for his cigarette. At the start of trial, Mendez made an oral motion *in limine* to preclude the Commonwealth from introducing the video. He argued that the Commonwealth had not disclosed it until the eve of trial and his defense focused on reasonable doubt about where the CI had obtained the methamphetamine.

The court denied the motion and held a jury trial. The jury convicted Mendez of the above offenses. Following a hearing, the court sentenced Mendez to an aggregate term of two and a half to five years' incarceration followed by five years' probation. Mendez did not file any post-sentence motions. This timely appeal followed.[2]

Mendez raises the following issues:

I. Was the jury's finding of guilt at trial so against the weight of the evidence presented as to shock one's conscience and sense of justice?

II. Did the trial court err in denying [Mendez]'s pretrial motion to preclude bodycam footage?

III. Did the trial court abuse its discretion when it sentenced [Mendez] to an aggregate sentence of thirty (30) to sixty (60) months['] incarceration within a state correctional institution[?]

Mendez's Br. at 6 (suggested answers omitted).[3]

Mendez first challenges the weight of the evidence. He argues the verdict is shocking to the conscience because the CI was the only eyewitness to the controlled buys and was not credible. He argues the CI "could not remember key points or facts," "was a known user [of] heavy controlled substances when the transactions were to have occurred," and was "a dealer of same prior to the transactions." **Id.** at 18, 20. He also asserts the CI was

---

[2] The notice of appeal erroneously states the appeal is from the conviction and sentencing order. We have amended the caption to reflect the appeal is from the judgment of sentence. **See Commonwealth v. Charles O'Neill**, 578 A.2d 1334, 1335 (Pa.Super. 1990).

[3] The Commonwealth has not filed a brief.

biased against Mendez and "had a criminal history that included making false reports and lying to law enforcement, specifically during prior controlled buy situations." *Id.* at 19. He argues that while law enforcement testified that they watched the controlled buys through a real-time video feed, the footage was not clear. He also points out that the pre-recorded money used in the controlled buys was not recovered from Mendez or the search of his residence.

Mendez did not raise this issue before the trial court. It is therefore waived. *See* Pa.R.Crim.P. 607(a) (stating defendant must preserve a weight claim by raising it before sentencing or in a post-sentence motion); *Commonwealth v. Sherwood*, 982 A.2d 483, 494 (Pa. 2009).

Even if it were not waived, we would find it meritless. Our standard of review is as follows.

> We review a trial court's order denying a weight challenge for an abuse of discretion. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. A trial court should not grant a new trial on weight grounds because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. The role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice. Courts have stated that a new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail.

*Commonwealth v. Fallon*, 275 A.3d 1099, 1107 (Pa.Super. 2022) (cleaned up).

While the trial court observed this claim to be waived, it also opined that the verdict was not contrary to the weight of the evidence. The court recounted the evidence corroborating the CI's testimony. This included the audio and video recording of the CI during the first controlled buy, which depicted "Mendez placing the methamphetamines in the cellophane wrapper and handing it to the CI," and the audio recording of the CI during the second controlled buy. Trial Ct. Op. at 5. The court also recalled the testimony of the detectives who had surveilled the area and who had observed the CI walking into and out of Mendez's residence. It further noted a detective had testified that, during the search of Mendez's residence, he had called the telephone number that law enforcement had used to arrange the controlled buys, and Mendez's phone had rung. The court also considered the fact that law enforcement had not recovered the pre-recorded money from Mendez, and found it was "not surprising" considering the controlled buys occurred on October 15 and 25, 2021, but the residence was not searched until October 29, 2021, and Mendez was not arrested until February 28, 2022. *Id.* at 6-7.

The court did not abuse its discretion in determining that the verdict was not shocking to the conscience. It was the province of the jury to determine

the CI's credibility, and even assuming he was a wholly unreliable witness, his testimony was corroborated by ample other evidence.[4]

Mendez next argues the court erred in denying his motion *in limine* to exclude the surveillance video showing the CI leaving Mendez's residence after the first controlled buy and asking Mendez's neighbor for a light for his cigarette. He argues that while the police narratives he received earlier in discovery "indicate the interaction occurred," they "were devoid of the specifics of said interaction." Mendez's Br. at 23-24. He argues that until he received the surveillance video on the eve of trial, he "believed that a reasonable doubt could be raised with the fact finder as to whether the controlled substance the CI provided to the NEU came from the neighbor, and it was based on this that Mr. Mendez decided to proceed to trial." *Id.* at 24.

We review this issue pursuant to the following standard:

The admission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will, or partiality, as shown by the evidence or the record.

*Commonwealth v. Miller*, 172 A.3d 632, 646-47 (Pa.Super. 2017) (cleaned up).

---

[4] To the trial court's recitation of the corroborating evidence, we add that seven bags of methamphetamine were recovered during the search of Mendez's apartment.

"Pre-trial discovery in criminal cases is governed by Pennsylvania Rule of Criminal Procedure 573." *Id.* at 647. "The rule lists certain items and information that are subject to mandatory disclosure by the Commonwealth when they are: (1) requested by the defendant, (2) material to the case, and (3) within the possession or control of the prosecutor." *Id.* The Rule also imposes on the Commonwealth a continuing duty to promptly disclose additional evidence that is subject to discovery or inspection under the Rule. *Id.* However, "[w]here the evidence is equally accessible or inaccessible to both the Commonwealth and the defense, the defense cannot use the discovery rules against the Commonwealth for its failure to produce the evidence." *Id.* (citation omitted). Moreover, "a defendant seeking relief from tardy disclosure under the rule . . . must demonstrate prejudice." *Commonwealth v. Lopez*, 57 A.3d 74, 83 (Pa.Super. 2012) (citation omitted).

In its opinion, the court explains that it denied the motion "because the video was provided as soon as the assistant district attorney received it and [it] was consistent with the other evidence that the defense possessed." Trial Ct. Op. at 8. It explained that the CI's bodycam footage, which the Commonwealth provided to Mendez during discovery, "captured a conversation of the CI asking an individual for a light for his cigarette but . . . showed the direction the CI was walking and did not depict the individual on the porch." *Id.* at 8-9. It noted that the new surveillance video confirmed that after asking for a light, the CI picked up a lighter from the banister of the

porch, lit his cigarette, and returned it to the banister. The video showed that "[n]othing was exchanged between the CI and the other individual." *Id.* at 9. The court also observed that the bodycam footage had "depicted Mendez placing methamphetamines in the cellophane wrapper of a cigarette pack and handing it to the CI and Mendez counting money as the CI was leaving the residence." *Id.* at 8.

We discern no abuse of discretion. Because the Commonwealth did not withhold the video from Mendez, no relief is due. *Miller*, 172 A.3d at 647. Furthermore, while the surveillance video confirms that the CI did not obtain any drugs during the interaction with the neighbor, this simply corroborates the CI's bodycam footage showing Mendez had already given the CI the drugs inside the apartment. Mendez has therefore failed to prove he was prejudiced by the late delivery of the surveillance video. *Lopez*, 57 A.3d at 83.

In his final issue, Mendez argues the court abused its discretion in sentencing him to two and a half to five years' incarceration followed by five years' probation. However, Mendez failed to raise this issue before the trial court. It is therefore waived. *See Commonwealth v. Padilla-Vargas*, 204 A.3d 971, 975-76 (Pa.Super. 2019).

Even if it were not waived, Mendez would be due no relief. An appellant challenging the discretionary aspects of a sentence must include a Pa.R.A.P. 2119(f) statement that presents "a substantial question that the sentence appealed from is not appropriate under the Sentencing Code." *Id.* at 975. Mendez's Rule 2119(f) statement claims his sentence is "manifestly excessive

in relation to his criminal conduct, personal history, and rehabilitative needs," considering "the information pertaining to him specifically as found in the pre-sentence investigation [("PSI")] and read in[to] the record by the sentencing court." Mendez's Br. at 14. Such a bald claim of excessiveness does not raise a substantial question. *See Commonwealth v. Watson*, 228 A.3d 928, 936 (Pa.Super. 2020).

If Mendez had raised a substantial question, we would find no abuse of discretion. *See id.* at 936-37 ("Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion" (citation omitted)). In his argument section, Mendez claims the court failed to consider his "individual rehabilitative needs, . . . particularly his extensive history of struggling with active drug addiction." Mendez's Br. at 26. He argues that the Commonwealth objected to his being made eligible for the state drug treatment program, and that the court should therefore have imposed a sentence of county confinement. *Id.* at 26-27.

First, as Mendez acknowledges, the court was apprised by a PSI report. We therefore presume the court properly considered all relevant sentencing factors, including Mendez's need for rehabilitation. *See Commonwealth v. Harper*, 273 A.3d 1089, 1097-98 (Pa.Super. 2022).

Next, the trial court's opinion belies Mendez's claim that the sentence was manifestly excessive and failed to account for Mendez's struggle with addiction. The court noted that it imposed a sentence for PWID falling at the

top of the standard guideline range. On the delivery counts, it imposed sentences falling in the middle of the standard ranges, to be served concurrently with the PWID sentence. Finally, it imposed consecutive sentences of probation for the criminal use of a communication facility convictions, which were below the mitigated guidelines ranges. The court explained it imposed consecutive probation because it "wanted to ensure that Mendez had a period of supervision after he was released from prison." Trial Ct. Op. at 12. It also pointed out that it made Mendez eligible for Recidivism Risk Reduction Incentive program ("RRRI") and boot camp. Furthermore, while the Commonwealth had precluded Mendez's participation in the state drug treatment program, the court had requested the Department of Corrections to consider Mendez for placement in a therapeutic community. The court gave the following reasoning.

> On the one hand, Mendez committed several felonies. On the other hand, Mendez was a bright individual with a difficult upbringing and a history of controlled substance use. The court reviewed all of the facts and circumstances and imposed an aggregate sentence that the court believed properly balanced them. The court made Mendez eligible for as many programs as possible so that if he is sincere in his desire to address his drug use and better his life, he will be able to do so. The court could not, however, give Mendez a "free pass" and impose no incarceration at all.

*Id.* at 13.

The court did not abuse its discretion.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>02/16/2024</u>